1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN G. DUNMORE,

11            Plaintiff,                    CIV. NO. S-11-2867 MCE GGH PS

12       vs.

13   JEREMY A. DUNMORE, et al.,

14            Defendants.                   ORDER
                                    /
15   _____

16            Presently before the court is Defendant Sidney B. Dunmore's motion to dismiss

17   and/or to strike, filed May 14, 2012, joined by defendants Anthony Garcia, Canyon Falls Group

18   ("Canyon Falls"), LLC, and Lynda Tremain, as well plaintiff's counter-motion to strike,[1] filed

19   May 29, 2012, with his opposition to defendants' motion.[2]

20   BACKGROUND

21            This action was removed from state court on October 28, 2011.  The second

22   amended complaint ("SAC") alleges that defendants violated the Dunmore Family Trust

23   ("Trust") established by Ruth and George Dunmore, of which plaintiff is the assignee of all

24   _____

25       [1]  Plaintiff's motion to strike is nothing more than an opposition, and will be construed as such.

26       [2]  The motions were taken under submission without a hearing by order of June 18, 2012.

                                          1

claims belonging to that trust.  The appellate court decision attached to the SAC sheds some light

on the matter.[3]  Although the case is not limited to a family dispute, it appears that the major

players are heirs of George and Ruth Dunmore.  Plaintiff Steven Dunmore is one of their sons

and the assignee of potential claims which Ruth, as trustee of her family's Trust, held against her

grandsons, defendants Sidney D. Dunmore and Jeremy Dunmore and their company, GSJ

Company, LLC ("GSJ").  Moving defendant Sidney B. Dunmore is the father of Sidney D.[4] and

Jeremy, and the brother of plaintiff Steven.  These claims, referenced in the appellate opinion, are

that grandsons Sidney D. and Jeremy obtained guarantees from their grandparents, Ruth and

George, on various bank loans, and that some of the guarantees contained forged signatures while

other guarantees were obtained based on undue influence by the grandsons.  (SAC, Ex. 3.)

        The instant complaint alleges fraudulent activity not only by these relatives but

also by various other individuals and entities.  The SAC alleges in this regard that defendants

Sidney D., Jeremy, and GSJ "procured fraudulent loans in order to live a lavish lifestyle, acquire

raw land and develop real estate projects at the expense or risk to third parties, and thereby

defraud their own grandparents, multiple financial institutions (banks) and other private lenders

and investors, including, but not limited to, many other senior or elder citizens as further

described and alleged hereinbelow." [Sic] (SAC ¶ 41.)  The SAC further alleges that Sidney D.

and Jeremy obtained "funding and multiple loans by unlawful means including grand theft,

identity theft, forgery and bank fraud...." (Id. at ¶ 45.)   The first and second claims are for

violations of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act

("RICO").  The SAC also includes state law claims of fraud, financial elder abuse, breach of

contract and guaranty, unjust enrichment, indemnity, fraudulent transfer, civil conspiracy or

---

[3]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[4]  Parties with the Dunmore surname will be referred to by their first names and middle initials as necessary.

1  aiding and abetting commission of torts, successor entity liability and quia timet.

2  DISCUSSION

3          Defendants Sidney B., joined by defendants Anthony Garcia, Canyon Falls, and

4  Lynda Tremain, move to strike the SAC because it was filed two days late and exceeds the fifty

5  page limit by one page, and to strike it under Fed. R. Civ. P. 12(f) because it avers redundant,

6  immaterial, impertinent, and scandalous matters.  They also seek to dismiss the SAC for lack of

7  subject matter jurisdiction because plaintiff has failed to allege an injury in fact, for failure to

8  state a claim, and for failure to join a party under Rule 19.

9  I.  LEGAL STANDARDS

10      A.  Rule 12(b)(1) - Subject Matter Jurisdiction

11          On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

12  plaintiff bears the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern

13  Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel.

14  & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Different standards apply to a 12(b)(1)

15  motion, depending on the manner in which it is made.  See, e.g., Crisp v. U.S., 966 F. Supp. 970,

16  971-72 (E.D. Cal. 1997).

17          First, if the motion attacks the complaint on its face, often referred to as a "facial

18  attack," the court considers the complaint's allegations to be true, and plaintiff enjoys

19  "safeguards akin to those applied when a Rule 12(b)(6) motion is made."  Doe v. Schachter, 804

20  F. Supp. 53, 56 (N.D. Cal. 1992).  Presuming its factual allegations to be true, the complaint

21  must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction.

22  For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendants must be residents

23  of different states.  For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint

24  must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or

25  controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.

26  Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

1        Second, if the motion makes a "factual attack" on subject matter jurisdiction,

2   often referred to as a "speaking motion," the court does not presume the factual allegations of the

3   complaint to be true.  Thornhill, 594 F.2d at 733.  In a factual attack, defendant challenges the

4   truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject

5   matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No

6   presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

7   facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

8   claims."  Id. (quotations and citation omitted).  The court may hear evidence such as declarations

9   or testimony to resolve factual disputes.  Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th

10  Cir. 1988).[5]

11       B.  Rule 12(b)(6) - Failure to State a Claim

12       In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

13  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

14  it must contain factual allegations sufficient to "raise a right to relief above the speculative

15  level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

16  pleading must contain something more...than...a statement of facts that merely creates a suspicion

17  [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

18  and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

19  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

20  556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

21  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

22  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

23

24       [5]  If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot
    determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v.
25  Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft
    Indus., 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion
26  determines facts where jurisdictional issue and merits are intertwined).

1    In considering a motion to dismiss, the court must accept as true the allegations of

2 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

3 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

4 motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

5 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

6 that general allegations embrace those specific facts that are necessary to support the claim.'"

7 National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

8 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

9 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

10 Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

11    The court may consider facts established by exhibits attached to the complaint.

12 Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

13 consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

14 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

15 papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

16 1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

17 Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

18    A pro se litigant is entitled to notice of the deficiencies in the complaint and an

19 opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

20 Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

21 II.  ANALYSIS

22    A.  Failure to Comply with Court Orders

23    This court's order filed January 13, 2012, required plaintiff to file a SAC limited

24 to fifty pages in length.  The district court's order, filed April 4, 2012, required plaintiff to file a

25 SAC within ten days of that order.  The SAC was filed April 16, 2012.  Pursuant to Fed. R. Civ.

26 P. 6(a), the complaint was timely filed.  The court notes that plaintiff has failed to comply with

5

1  the fifty page limit; however, striking the complaint is far in excess of a reasonable sanction for

2  filing a complaint that exceeds the page limit by one page.  Defendants' motion to strike in this

3  regard is therefore denied.

4          B.  Subject Matter Jurisdiction

5          Defendants contend that plaintiff has failed to plead any injury to himself.

6  Although plaintiff has named banks, companies and trusts, defendants claim that he has no actual

7  or perceived interest in any of the purported transactions "at the purported time any of the actions

8  accrued."

9           If a plaintiff has no standing, the court has no subject matter jurisdiction.

10          "[B]efore reaching a decision on the merits, we [are required to]
           address the standing issue to determine if we have jurisdiction."
11          Nat'l Wildlife Fed'n v. Adams, 629 F.2d 587, 593 n. 11 (9th
           Cir.1980).  "[T]he standing question is whether the plaintiff has
12          'alleged such a personal stake in the outcome of the controversy' as
           to warrant his invocation of federal-court jurisdiction and to justify
13          the exercise of the court's remedial powers on his behalf."  Warth
           v. Seldin, 422 U.S. 490, 498- 99, 95 S.Ct. 2197, 45 L.Ed.2d 343
14          (1975) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7
           L.Ed.2d 663 (1962)).  There are three requirements for standing:
15          (1) "a plaintiff must have suffered an 'injury in fact'--an invasion
           of a legally protected interest which is (a) concrete and
16          particularized and (b) actual or imminent, not 'conjectural' or
           'hypothetical;'" (2) "there must be a causal connection between the
17          injury and the conduct complained of--the injury has to be 'fairly ...
           trace[able] to the challenged action of the defendant, and not ...
18          th[e] result [of] the independent action of some third party not
           before the court;'" and (3) "it must be 'likely' as opposed to merely
19          'speculative,' that the injury will be 'redressed by a favorable
           decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61,
20          112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted)
           (alterations in original).

21

22  Washington Legal Foundation v. Legal Foundation of Washington, 271 F.3d 835, 847 (9th Cir.

23  2001) (en banc).

24          Plaintiff's claims invoke an interest or legal right to act on behalf of his mother

25  who properly assigned the claims of her trust to him.  See SAC, ¶ 1, Ex. 3.  Based on the facts

26  alleged, for purposes of pleading, plaintiff has a legally protected interest in his mother's trust,

1   and therefore has properly pleaded that he suffered an 'injury in fact,' or invasion of an interest

2   personal to him.  Therefore, defendants' motion to dismiss based on lack of subject matter

3   jurisdiction is denied.

4          C.  Failure to State a Claim

5          Defendants move to dismiss the RICO claim for failure to plead it with

6   particularity, for failure to plead a pattern of racketeering activity, and because there is no

7   allegation of damage to business or property.  Defendant Sidney B. claims that there is no single

8   averment in the SAC which identifies any conduct by him, but that the word "defendant" is used

9   all inclusively throughout the complaint.  A review of the SAC indicates that, contrary to Sidney

10  B's contentions, he is mentioned throughout the complaint, and in fact there are two claims

11  against him, financial elder abuse (SAC, ¶¶ 151-156), and "'after the fact' civil conspiracy or

12  aiding & abetting commission of torts."  (SAC, ¶¶ 187-192.)  Nevertheless, Sidney B brings his

13  motion to dismiss in regard to the RICO claim only, which is not alleged against him.  (SAC at

14  26.)  Defendants Garcia, Canyon Falls, and Tremain join in that motion.  There are no RICO

15  claims against defendants Garcia and Canyon Falls either.  The undersigned agrees that the

16  claims in the SAC are extremely difficult to decipher; however, plaintiff is the master of his

17  complaint and his first claim alleging RICO violations is asserted against defendants Sidney D.

18  and Jeremy only.[6]  (SAC at 26.)

19          Plaintiff's second claim, entitled "RICO Criminal Conspiracy (Civil RICO

20  Liability)," is asserted against defendants Sidney D., Jeremy, Chady Evette Dunmore, Claude F.

21  Parcon, Kelly Houghton, Mary A. Neilson, Shelli R. Donald, and Lynda Tremain only.  Tremain

22  is the only defendant who has both appeared in this action and against whom there is a RICO

23

24          [6]  In his argument in opposition concerning adding indispensable parties, plaintiff
    emphasized that the RICO claims pertain to Sidney D. and Jeremy, and that Sidney B. is alleged

25  only to have "acquired an interest in, or gone into business with his sons and their RICO
    enterprises, or order to show [sic] that he was in working with, advising or aiding and abetting

26  them, as alleged, despite already knowing about their false and fraudulent bank loan schemes."
    (Opp. at 6.)

1   claim.  The only RICO claim against Tremain is Claim II, that she and other Notaries Public

2   conspired with defendants Sidney D. and Jeremy to engage in the RICO fraud scheme alleged in

3   Claim I.  Since these defendants have not yet been served and have not appeared in this action,

4   and therefore the substantive RICO claim has not been tested, it cannot yet be determined

5   whether plaintiff has properly pled the existence of a conspiracy to violate RICO.  See Neibel v.

6   Trans World Assur. Co., 108 F.3d 1123, 1127-28 (9th Cir. 1997).  Therefore, Tremain's motion

7   to dismiss RICO Claim II against her is denied without prejudice to its renewal when the

8   substantive RICO claim is addressed.

9         D.  Failure to Join a Party Under Rule 19

10        Defendants next contend that the SAC should be dismissed because plaintiff has

11  alleged that defendants "controlled, operated and managed" numerous entities and individuals,

12  and "unlawfully commandeered" numerous banks, entities, and individuals, but has not joined

13  them as indispensable parties under Rule 19.

14        In opposition, plaintiff argues that it is his option to decline to name these persons

15  and entities as defendants, and that some of them might only be called as witnesses.  Some of

16  them have already sued and obtained judgments against Sidney D. and Jeremy, and cannot bring

17  suit again, according to plaintiff.

18        Rule 19 of the Federal Rules of Civil Procedure provides in pertinent part:

19      (a) (1) A person who is subject to service of process and whose
        joinder will not deprive the court of subject-matter jurisdiction

20      must be joined as a party if: (A) in that person's absence, the court
        cannot afford complete relief among existing parties; or (B) that

21      person claims an interest relating to the subject of the action and is
        so situated that disposing of the action in the person's absence may

22      (i) as a practical matter impair or impede the person's ability to
        protect the interest; or (ii) leave an existing party subject to a

23      substantial risk of incurring double, multiple, or otherwise
        inconsistent obligations because of the interest. (2) If a person has

24      not been joined as required, the court must order that the person be
        made a party .... (b) If a person who is required to be joined if

25      feasible cannot be joined, the court must determine whether, in
        equity or good conscience, the action should proceed among the

26      existing parties or should be dismissed. The factors for the court to

1    consider include: (1) the extent to which a judgment rendered in
     the person's absence might prejudice that person or the existing
2    parties; (2) the extent to which any prejudice could be lessened or
     avoided by: (A) protective provisions in the judgment; (B) shaping
3    the relief; or (C) other measures; (3) whether a judgment rendered
     in the person's absence would be adequate; and (4) whether the
4    plaintiff would have an adequate remedy if the action were
     dismissed for nonjoinder.
5
     A motion to dismiss under Rule 12(b)(7) requires the court conduct
6    three successive inquiries. U.S. v. Bowen, 172 F.3d 682, 688 (9th
     Cir.1999). First, the court must determine whether the absent party
7    is "necessary." Id. Second, if the absent party is "necessary," the
     court considers whether joinder is "feasible." Finally, if joinder is
8    not feasible, the court reaches the third step and determines
     whether the case can proceed without the absentee or whether "in
9    equity and good conscience" the action should be dismissed.
     Fed.R.Civ.P. 19(b).
10

11   Kennedy v. AJVS, Inc., 2012 WL 1748013, *2 (W.D. Wash. May 15, 2012). In regard to the

12   second factor, whether joinder is feasible, the court should assess: "(1) whether complete relief

13   can be accorded among the parties to the lawsuit without joinder, (2) whether the absent person's

14   ability to protect its interest in the subject-matter of the suit will be impaired, and (3) whether any

15   existing parties might be subjected to a substantial risk of multiple or inconsistent obligations

16   unless the absent person joins the suit." J&J Sports Productions, Inc. v. Barksdale, 2012 WL

17   1353903, *2 (E.D. Cal. Apr. 13, 2012) (citing Fed. R. Civ. P. 19(a)).

18        Defendants argue nothing more than, "assuming the allegations to be true,

19   Plaintiff would have to join these parties under F.R.C.P. Rule 19 as they are indispensable

20   parties." (Mot. at 11.) Other than this conclusory statement, defendants have made no effort to

21   brief why the absent parties are necessary, why joinder is feasible, and if not feasible, why the

22   case can not proceed without the absent parties. Bare contentions, unsupported by explanation or

23   authority, are deemed waived. See FDIC v. Garner, 126 F.3d 1138, 1145 (9th Cir. 1997) (claim

24   waived when no case law or argument in support is presented). It is not until the reply that

25   defendants first brief this issue. In their reply, defendants argue that if these indispensable parties

26   are not joined, their liability, if any, could not be shared, that multiple litigations might otherwise

1   be required, and that due process requires that they be joined.  Defendants themselves concede,

2   however, that they may not understand the allegations.  (Reply at 4.)  This argument is far too

3   vague to permit consideration of the Rule 19 factors.  In any event, defendants have the option to

4   implead third parties if they so desire.  Therefore, defendants' motion to dismiss on this ground is

5   denied.

6        E.  Motion to Strike - Rule 12(f)

7        Defendants next assert that the entire SAC should be stricken because "not a

8   single fact is plead specifically identifying the specific conduct of moving Defendant."  (Def.'s

9   Mot. at 11.)  As defendants Garcia, Canyon Falls, and Tremain have joined in Sidney B.'s

10  motion, the SAC has been reviewed in regard to these defendants.

11       The Federal Rules of Civil Procedure provide that, upon its own motion or motion

12  by a party, "the court may strike from a pleading an insufficient defense or any redundant,

13  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

14       Contrary to defendants' argument, the SAC is replete with allegations against

15  Sidney B.  In addition to the three claims against him for financial elder abuse, civil conspiracy

16  or aiding and abetting, and quia timet, as set forth in Claims 5, 10, and 12, plaintiff has pled facts

17  linking this defendant to the claims.  In addition to the allegations conceded by defendants in ¶¶

18  75, 77, 79, 81, 84 and 89, plaintiff alleges that "Defendant Sidney B. was fully aware of the

19  adverse legal consequences and financial detriment and damage that would result to the

20  [Dunmore Family] Trust and Assignor Ruth Dunmore if she surrendered all her claims against

21  his two boys and their co-conspirators (including himself, as it turns out)."  (SAC, ¶ 82.)   In

22  addition to defendants' acknowledgment that the SAC alleges that Sidney B. represented that he

23  was going into business with his two sons, Jeremy and Sidney D, and therefore plaintiff alleges

24  that Sidney B. "knowingly joined, acquired an interest in, and aided defendants Sidney D. and

25  Jeremy in their criminal enterprises and operations, as previously described herein," plaintiff also

26  alleges that there was a conspiracy between defendants Sidney B. and Garcia and Canyon Falls.

1  (Id. at ¶¶ 84, 85-89.)  It is alleged that these defendants conspired to offer to purchase and pursue

2  tort claims on behalf of the Dunmore Family Trust through defendant Garcia who represented

3  himself as a member of Canyon Falls when in fact he was affiliated with Dunmore Capital, the

4  very company against whom the tort claims would be brought.  (Id. at ¶ 88.)  The allegation is

5  that Sidney B., in planning and conspiring with Garcia and Canyon Falls to make this offer, he

6  could avoid or prevent prosecution against Sidney D. and Jeremy.  (Id. at ¶ 89.)

7          Claim 10 also contains allegations against Sidney B., such as that he agreed with

8  Garcia and Canyon Falls to aid and abet the torts of Sidney D. and Jeremy.  (SAC, ¶ 191.)

9  Similarly, as to the claims against Garcia and Canyon Falls, plaintiff has alleged facts against

10  these defendants.  See e.g. Claim 10, SAC ¶¶ 187-192.

11          It is true that there is at least one other claim against Sidney B. for which plaintiff

12  has alleged absolutely no facts against this defendant.  See e.g. Claim 5, SAC ¶¶ 151-160.

13  Striking the complaint is not the proper procedural mechanism for this defect, however.

14          The claims relating to defendant Tremain also allege facts pertaining to her

15  conduct.  (SAC ¶¶ 133, 134, 140, 186, pp. 9-10.)  Paragraph 186 incorporates by reference the

16  facts described earlier against the notaries, and alleges that the notaries "improperly and

17  unlawfully notariz[ed] the false and forged signatures of George P. Dunmore and Ruth Dunmore

18  on numerous financial or loan documents...."  (Id. at ¶ 186.)

19          There being no redundant, immaterial, impertinent, or scandalous matters alleged

20  in the SAC, defendants' motion to strike is denied.  A motion to strike is not the proper vehicle

21  in which to claim a lack of facts supporting the claims.

22  CONCLUSION

23          Accordingly, IT IS ORDERED that:

24  1.    Defendant Sidney B. Dunmore's motion to dismiss and to strike, filed May 14, 2012,

25          (dkt. no. 34), as joined by defendants Canyon Falls Group, LLC, Garcia, (dkt. no. 35),

26          and Tremain, (dkt. no. 36), is denied.

2.      Plaintiff's motion to strike, filed May 29, 2012, (dkt. no. 38), is denied as unnecessary.

3.      Moving defendants shall file an answer within twenty-eight days of this order.

DATED: July 10, 2012

/s/ Gregory G. Hollows<br>UNITED STATES MAGISTRATE JUDGE

GGH:076/Dunmore2867.mtd.wpd